with Benjamin Woodhouse v. Meta Platform 237973. Mr. Woodhouse, you can come up to the left here. Thanks. Good morning, Your Honor. It's an honor to be here. Let me start out with a couple of administrative points. First off, there's a related matter in the Ninth Circuit. It has a red flagged case. In that case, triple conflicted counsel has pled another red flagged case, which now brings it to six red flagged cases across both pending matters. I'm sorry, what do you mean by red flagged cases? She argued a case that has been overturned that's red flagged. At least according to Westlaw. Correct, according to Westlaw and LexisNexis. So there's five in this case, and then there's one now in the Ninth Circuit as well. She's also triple conflicted in that case, like she is here in this case. And there's also an unadmitted filing, like in this case, the motion that was granted. Mr. Van Schwing was not admitted to the State Bar of New York when the motion was granted. And the motion was granted overturning Hagen's, which is Supreme Court case law. And I pointed that out at the time at the district level. Next, I want to state I conferred two weeks prior to coming on the arguments that I present this morning and the case that I would like to add, which wasn't included in my briefs. I provided that to triple conflicted counsel and Alphabet Inc. They didn't confer and they haven't provided me with any notice of what they plan to argue today. Next, I'd like to note U.S. v. Noel, which is 11th Circuit case. Citation is 893 F3D 1294. And basically, it gives private standing for kidnapping, for victims of kidnapping. So it says that the state's not the only one that has standing in kidnapping matters. I don't know if it's included. I apologize. I don't know if it's included in the complaint I filed. I think it was included in motions thereafter as it happened after the initial filing. But after filing on the incineration of Ninth Circuit Judge Bia, I witnessed two of my colleagues from Pepperdine Law School that were counsels, members of the state bar, Ms. Fernandez and Ms. Baker. They were both decapitated in front of me across from my house with counsel not of record, which is Ken Duran and this triple conflicted counsel here watching on from the Genocide Hotel. Go ahead. I'm just wondering, in your view, who is the Judge Bia who sits on the Ninth Circuit today? Is that an imposter? I mean, you say that he was incinerated. I assume that means to death. Right. Correct. But there is a person claiming to be Judge Bia who sits regularly on the Ninth Circuit to this day. Well, that might be a matter for investigation, but considering these other... I don't know what your theory is because he seems to be alive and well. Okay. Well, to my knowledge, he is deceased. Okay. But I'm certain of my colleagues. I knew them well. I know exactly what they look like. In addition, they decapitated Kate Bosworth. She was unknown to me, but my best friend in college, he was a director on one of her shows. They decapitated her. She's one of the most famous actresses in the world. I've survived over 2,000 assassination attempts on my property alone during the course of this litigation. This includes attacks from seminal cell, attacks from various organized crime units that are financed by triple conflicted counsel here. She often sits in the Genocide Hotel across the street from my house and encourages these parties as they attempt assassinations. I have also overheard Ken Duran stating to members of the seminal cell that if they couldn't effing kill me, that they should just go ahead and burn my house down. I'd like to bring to the court's attention, and this is a sensitive matter, I understand, and I humbly and sadly feel that I have to declare this. Ninth Circuit Judge Miller cohabitates with triple conflicted counsel in the Genocide Hotel. He's been there for over 16 months. It's well known that he's in a relationship with Alphabet's counsel, Ms. Candido, and he was a ruling counsel on a related Ninth Circuit case involving all of these parties. Also overheard Judge Miller routinely on a nightly basis taking meals from secretaries at Google and Alphabet that purchased meals for him. I want to emphasize this matter is not something that's over or that I'm complaining about now. It's something that's fluid. It's known to the California State Police as they assassinated six California State Police members with military contractors when they tried to serve Ken Duran with a warrant to pick him up. It is known to the FBI that are routinely in the hotel, that have routinely been executed. There have been two babies executed in the Genocide Hotel, and it's reported that Ken Duran is responsible. I also personally witnessed Ms. Candido carrying a gigantic sink through a parking lot late at night in the Genocide Hotel, which I agree is kind of absurd and bizarre. And lastly, I just want to make the case that this is the worst domestic terrorist attack in U.S. history. It's estimated that they have executed 15,000 people over a three-year period. That far surpasses 9-11. And frankly, considering that it's coming from trillion-dollar companies, U.S. leaders, people like this triple-conflicted council, I think it's even more dangerous than what Osama bin Laden did. And I've come to the Second Circuit because I think the world needs to know about these things. I think that all the leaders in Washington need to step up and recognize that trillion-dollar companies cannot be militarized. They cannot have access to special weapons. They cannot decapitate people with a laissez-faire attitude. It's just savage. Triple-conflicted council has routinely yelled slurs on every single night that I've been in my house. I can't sleep at night. The nights that I can sleep, I usually wake up to the smell of burning bodies. There's cannibalism going on in the Genocide Hotel by the Seminole Cell. And triple-conflicted council and Ken Duran, they just have sat, they have financed this, they have observed this. They have done nothing about it. And it's not even the terrorism that I can't get around. It's not even the decapitations of my colleagues or the executions of babies, the infanticide. What I can't get over is that they won't even leave the hotel after I've, you know, declared these things, after these things are known to the FBI, to the mayor of the town. Everybody has knowledge of these events. And they still won't leave the hotel. It's an arrogance that I can't get my head around. And that's the reason I've traveled in person to come and tell this story. And I'm telling the Second Circuit that if the federal government can't, the federal judiciary and the DOJ, if they can't get this under control as a result of coercion, I think it's going to raise some very serious constitutional questions. And I think there's going to be some very serious remediation that, you know, maybe we don't need. Maybe we just need a little bit more discipline. Mr. Woodhouse, thank you. We've reserved two minutes for rebuttals. So we'll... Thank you, Your Honor. Yes. Ms. Lindsley. May it please the court, Kristen Lindsley of Gibson, Dun & Crutcher. I'm representing Meta Platforms, Inc., Nike, and Gibson, Dun & Crutcher, all of whom are defendants in the underlying case and appellees in this court. My... The court should affirm the district court's dismissal of this action sua sponte, meaning his dismissal sua sponte of this action. I'm not going to respond to the various allegations counsel made, many of which are repeated in the papers. Those allegations in the papers, in the briefing to this court, in the argument we just heard, are entirely devoid of merit, and they're demonstrably frivolous and delusional. That is exactly the standard that this court has repeatedly held, is the standard for dismissal sua sponte of an action before the district court. Under Livingston, this court's precedent in Livingston, which is cited in our papers. Pillay, P-I-L-L-A-Y, also cited in our papers. Fitzgerald are all this court's precedents. There's no solicitude owed to Mr. Woodhouse on the basis that he's pro se, because he's also a practicing lawyer admitted in the state of California. Despite a couple of orders to the state bar that he should not be, he's still admitted, and under this court's precedent in Tracy, he does not get special solicitude. As the district court said here, in a very thorough, well-analyzed, well-reasoned, and thoughtful decision, and one that went through this party's extraordinary lengthy litigation history in multiple district courts in this country, even with solicitude, dismissal sua sponte would be appropriate. As the court said, no degree of solicitude would make the allegations that are presented here and the fantastical theories that are presented here actionable. The court also was correct in not granting leave to amend. Mr. Woodhouse did not raise leave to amend as a ground in his notice of appeal or in his briefing, but even if he had, there's clearly no basis for leave to amend, because everything that happened after the court's dismissal only confirmed the same fantastical theories are all that are going to be presented. There were post-trial motions, and I think the supplemental appendix at 212 to 14 illustrates some of the allegations that came out after the court's dismissal. Nothing was offered or added that would make an actionable claim. Likewise, the court only needs to look at the briefing in this case, and you will see, again, there's nothing in there that would warrant leave to amend. With the injunction that the court granted, the court granted a nationwide injunction. Judge Engelmeyer carefully outlined the contours of this. He gave Mr. Woodhouse 30 days to respond to an order to show cause why he shouldn't enjoin him from bringing further actions in the Southern District of New York. We then moved for an expanded injunction to cover the entire federal judicial system on the ground that he had been filing multiple cases in the Central District of California. All of those cases were dismissed. All of those dismissals were affirmed by the Ninth Circuit. In addition, he had filed a case in the D.C. District Court. Again, that case was dismissed. That one was dismissed sua sponte, as was the present case before Judge Engelmeyer, and that sua sponte dismissal was affirmed by the D.C. Circuit. So we're not just in the Southern District or in the Second Circuit. We're in three different districts in the federal system. The court did not extend its injunction to the state courts. This court has admonished in the Martin Trigona case that normally that is not done out of a sense of comedy toward the state court system and on the ground that the justification for a nationwide injunction in the federal system is to protect the federal judiciary, to protect federal litigants, et cetera. But there is precedent for extending the injunction to state courts, and Judge Engelmeyer left open the possibility of doing that given that Mr. Woodhouse had also filed in California State Court. So he said if Mr. Woodhouse continues to do that kind of thing, he may extend the injunction. But this court has repeatedly upheld nationwide injunctions of this sort. In the Eliahu case, which we cited in our papers, there had been only two district courts implicated, the Northern District of California and the Southern District of New York. And even just with the two districts implicated, the court said that was sufficient to affirm a nationwide injunction. Here we have three, obviously, and many, many cases filed in the Central District of California. And injunctions in those cases not having been effective because the courts there entered district-specific injunctions only to have Mr. Woodhouse then go out and sue in D.C. and New York where none of the events in question are even alleged to have occurred. In the Hermes de Paris case, the Ward case- Just so you know, you're over time, so if you want to try to wrap it up. Yes, sorry, Your Honor. The Trigona case, the Malley case. So there's multiple cases where this court has upheld nationwide injunctions. So absent questions- Actually, I have one question. Is it your understanding that we're reviewing a nationwide injunction or are we reviewing the sua sponte dismissal? Thank you, Your Honor. That's a good question, and I should have been clearer. The appeal is from the dismissal sua sponte. The notice of appeal, which is at appendix 221 to 224, did not appeal the nationwide injunction. As we said in our papers, he's waived any challenge to that. And frankly, I don't think the court has appellate jurisdiction over the nationwide injunction. Because it was not raised in the notice of appeal, and it was not argued in the papers, and it was not attached to the notice of appeal. So for all those reasons, I don't think that is properly before the court, and I should have mentioned that as well. Only if the court finds that there is appellate jurisdiction and excuses the waiver would the court affirm the injunction. Thank you. Your Honor, as it may please the court, John Kenney on behalf of Coapulese Alphabet, Inc. I'll join in the arguments of Coapulese today to briefly expand on Your Honor's last question. Given the vexatious litigation that has occurred so far, I think out of an abundance of caution, our briefing addressed all of the issues that the district court had ruled on so that the court would have a full understanding of those issues if Mr. Woodhouse were to raise them on appeal. I'll just briefly emphasize today that Mr. Woodhouse's endless vexatious litigation across multiple jurisdictions has imposed significant costs on the courts as well as the targets of his conspiracy theories. Mr. Kenney, I'm just curious. Do you have something to say that is specific to your client that's different than what co-counsel spoke about? I do have one point. Is there something specific about Alphabet that is separate from the arguments that have already been made? Of course, Your Honor. I think we'll rest on our briefing with the one exception of the fact that Mr. Woodhouse called out one of my colleagues at my law firm and made accusations about them in this argument that are false. And with that, we rest on our briefing, Your Honors. Thank you very much. Thank you. Mr. Woodhouse, you've reserved two minutes. Yes, Your Honor. I just wanted to put in the brief Burgos v. Hopkins, which doesn't provide for res judicata in this case. In the cases that Ms. Lindsley references, like in the Second Circuit, she pled a red flag case. The Second Circuit ran in and prematurely ruled after she pled it due to her coercion. She pled felonies, like in this case, entering attorney emails into the record in every case referenced. They were conflicted in every case referenced. Mr. Van Schwing was not admitted in most cases. In many cases, in one case, he contacted the clerk and put it into the record, his emails to the clerk. This is a case of coercion. This is a national security case, and this is something that is very sensitive and requires this court to show tremendous independence and volition from a counsel that's obviously very decorated and obviously is very well compensated and represents very expensive clients. But there's nothing in the record that would allow them to prevail with all of their red flag cases and non-admitted to the court filings. And to complement that with their terrorist actions, which have surpassed 9-11, I really, from our perspective, I can't see any reason why anyone would rule for her. Thank you, Your Honor. Thank you. Thank you both. That concludes the argument in this case. We'll take it under advisement.